

RECEIVED
IN LAKE CHARLES, LA
SEP 2 7 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| JENELL STEVENS, ET AL. | : | DOCKET NO. 2:04 CV 0772 |
| VS. | : | JUDGE MINALDI |
| BANK ONE NA | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Presently before the court is a Motion for Summary Judgment [doc. 19] filed by the defendant, Bank One, N.A. ("Bank One"). This motion is considered unopposed.[1]

Facts

The plaintiff, Jenell Stevens, began her employment with a predecessor of Bank One on April 7, 1969, in an administrative/clerical capacity.[2]

Stevens was born on February 18, 1949, and was 53 years old on November 6, 2002.[3]

Her most recent position with Bank One prior to the Bank's offer to transition her to the Customer Service Associate II role was as Banking Center Manager ("BCM") at the Second Avenue banking center in Lake Charles, Louisiana.[4]

---

[1] See Order dated September 11, 2006 [doc. 74] in which this court ordered that the Motion for Summary Judgment would be considered unopposed and Bank One's Statement of Material Facts would be deemed admitted.

[2] Depo. of Stevens, Vol. I, pp. 46, 47.

[3] Depo. of Stevens, Vol. I, p. 30.

[4] Depo. of Stevens, Vol. I, pp. 46, 47.

As BCM, Stevens was ultimately accountable for the entire banking center sales and service operation, including sales production performance.[5] Her responsibilities included: leading, managing, and developing her staff; managing sales and service activities; ensuring adherence to customer service standards; and controlling and mitigating financial risks.[6]

Over the last several years, Bank One's banking center operation evolved from a traditional service, reactive orientation to a more competitive, productive sales and service orientation.[7] Bank One placed greater emphasis on a BCM fully understanding and managing her banking center's entire profit and loss operation.[8]

In January 2002, Christopher Smith ("Smith") became the district manager for the district that included the Second Avenue banking center.[9] Smith instituted quarterly reviews for BCM's within his district. Most of the performance indicators in the quarterly performance review were objective measurements like retention of customers and sales production. Reviewing these items on a quarterly basis helped both the district manager and the BCM know which areas were satisfactory and which needed improvement.[10]

Judy Weathers ("Weathers") served as the human resources business partner for the Second

---

[5] Declaration of Christopher Smith, District Manager of Bank One, at ¶ 7.
[6] *Id.*, at ¶ 8.
[7] *Id.*, at ¶ 9.
[8] *Id.*, at ¶ 10.
[9] *Id.*, at ¶ 2.
[10] *Id.*, at ¶ 3.

2

Avenue banking center during the time that Stevens served as the BCM at that location.[11] Weathers received a number of complaints from Stevens's staff regarding her management style and the working conditions at the Second Avenue center.[12]

Stevens admits taking no action to improve the identified employee relations issues because she was of the opinion that the complaints were not valid.[13]

Jim McGough, Stevens's district manager for a short time in 2001, outlined various employee and management problems with Stevens in a documented discussion dated August 31, 2001.[14] Stevens received a "needs improvement" rating on her Retail Banking Center Manager 2001 Performance Plan, which is the lowest possible performance rating a manager can receive. Areas needing improvement over a 90-day probation period were identified, including:

- performance with staff;
- operating losses;
- branch appearance; and
- banking center profitability.[15]

On January 17, 2002, Stevens received a "documented discussion" based upon her poor

---

[11] Depo. of Weathers, pp. 7-8.

[12] *Id.*, pp. 21, 37.

[13] Depo. of Stevens, Vol. I, p. 176, Vol II, p. 162-163.

[14] Depo. of Stevens, Exh 2 and Vol. I, p. 9-97; Declaration of Christopher Smith at ¶6.

[15] Depo. of Stevens, Exh. 6 and Vol I, p. 162; Declaration of Smith, ¶ 11.

3

performance and the previous documented discussion.[16]

Bank One's corrective action process typically involves four steps: 1) documented discussion; 2) formal written counseling; 3) final written warning; and 4) failure to correct the deficiencies or another violation after final written warning after disciplinary action, including potential termination.[17]

On April 11, 2002, Stevens received a "needs improvement" rating on her quarterly review. Stevens received low scores in nearly every area evaluated including: sales production, profit and loss, scheduling, investments, business development, and household retention.[18] On that same date, Smith was also given formal written counseling because of her continuing difficulties in managing bank employees. Employee complaints continued and Stevens continued to improperly schedule employees. Stevens was given another 90 days to improve her performance and employee issues. She was informed that if she failed to do so, she would be issued a final written warning.[19]

On August 19, 2002, Stevens again received a "needs improvement" rating on her quarterly review as she continued to show deficiencies in some of the areas previously identified as requiring improvement.[20] As a result of her failure to improve, On August 19, 2002, Stevens was issued a final written warning, but was given an additional 90 days to show substantial improvement.

---

[16] Depo. of Stevens, Exh. 7; Decl. of Smith, ¶ 12.

[17] Decl. of Smith, ¶ 5.

[18] Depo. of Stevens, Exh. 9; Decl. of Smith, ¶ 3.

[19] Depo. of Stevens, Exh. 8; Decl. of Smith, ¶ 14.

[20] Depo. Stevens, Exh. 10; Decl. of Smith, ¶ 15.

Stevens was notified that her failure to show substantial improvement could lead to termination.[21]

The final written warning issued to Stevens recounted the areas of deficiency on which Stevens had been counseled. One such area was employee turnover. Since the time Stevens was counseled on this issue in April, 2002, one employee quit, one transferred to another center, one was terminated, and another threatened to leave.[22]

In an addendum to Stevens's final written warning on August 19, 2002, Bank One noted that she had failed to appropriately assist a mystery shopper who visited her bank. The mystery shopper filed a report on her visit to Stevens's banking center which indicated that the mystery shopper was made to wait 19 minutes before being helped and that Stevens responded sharply to a question posed by the mystery shopper. There were no other foot-traffic customers in the bank during the 19-minute wait.[23]

Stevens's performance issues were addressed pursuant to the Bank One Conduct and Performance Standards Policy which includes a corrective action process and progressive discipline.[24] Stevens was counseled and progressively disciplined on a number of issues, which resulted in a recommendation that she be removed from her position as BCM of Second Avenue and offered a CSA II position at another branch. The recommendation for termination, or demotion, dated November 6, 2002, reiterated the deficiencies and noted that there had been no change in her performance and an audit of the Second Avenue banking center also uncovered serious security

---

[21] Depo. of Stevens, Exh. 11; Decl. of Smith, ¶ 16.

[22] Depo. of Stevens, Exh. 11; Decl. of Smith, ¶ 16.

[23] Depo. of Stevens, Exh. 12; Decl. of Smith, ¶ 17

[24] Decl. of Smith, ¶ 4.

issues. This was the Second Avenue Banking Center's second consecutive unsatisfactory audit rating under Stevens's management.[25]

Stevens was held accountable for not effectively leading and managing her banking center.[26] While Stevens could have been terminated for unsatisfactory performance, Bank One chose instead to offer Stevens the opportunity to transfer to another position.[27] Stevens was informed of the opportunity to transfer from BCM to CSA II on November 6, 2002.[28] Several days later, Stevens communicated to management that she would accept the CSA II position; however, she requested and was granted a leave of absence and she has not worked at Bank One since that time.[29] Stevens claims that she is completely unable to work.[30]

Bank One has a Non-Discrimination and Non-Harassment Policy which became effective January 1, 1999, and remained in effect during 2001-2002.[31]

Janet Hatsy, an African-American female who was born on September 2, 1956, succeeded Stevens as the BCM at the Second Avenue banking center. Hasty was 46 years old at the time she succeeded Stevens as the Second Avenue BCM.[32] Under Hasty's management, the Second Avenue

---

[25] Depo. of Stevens, Exh. 13; Decl. of Smith, ¶ 18; Depo. of Greenman, Exhs. 1 and 2.

[26] Depo. of Stevens, Exh. 11; Decl. of Smith, ¶ 16.

[27] Decl. of Smith, ¶ 21.

[28] Complaint ¶ 4.

[29] Depo. of Stevens, Vol II, pp. 202; Decl. of Smith, ¶ 22.

[30] Depo. of Stevens, Vol. II, p. 292, 294.

[31] Depo. of Stevens, Exhs. 15, 16.

[32] Depo. of Hasty, pp. 8, 13.

banking center's performance rose from [33] a level 6, the worst performance level, to a level 3 in only a few months.

Smith became district manager in January 2002, and since that time there have been four BCM's in his district that have been involuntarily removed. Jenell Stevens, an African-American female; Cheryl Richard[34], a white female; John Young, a white male; and Aparna Saraf, an Indian female.[35]

Summary Judgment Standard

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the Court establish that there are no genuine issues of material fact, and that the moving party is entitled to summary judgment as a matter of law.[36] When the nonmoving party has the burden of proof on an issue, the movant must state the basis for the motion and identify those portions of the pleadings, depositions, admissions, answers to interrogatories, together with affidavits, that demonstrate the absence of a genuine issue of material

---

[33] Depo. of Hasty, pp.19, 56.

[34] Cheryl Richard was a long-time employee of Bank One who experienced similar performance issues to Stevens and was also offered a transfer to another position with Bank One in lieu of termination. Richard had more experience as a BCM than Stevens. Decl. of Smith, ¶ 24.

[35] Decl. of Smith, ¶ 23.

[36] Fed.R.Civ.P. 56(c); See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. 2548, 2552-54, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-88, 106 S.Ct. 1348, 1355-57, 89 L.Ed.2d 538 (1986).

fact.[37] A mere conclusory statement that the other side has no evidence is not enough to satisfy a movant's burden.[38]

Once the movant has shown the absence of material factual issues, the opposing party has a duty to respond, via affidavits or other means, asserting specific facts demonstrating that there is a genuine issue for trial.[39] The Court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment.[40] However, a party opposing summary judgment may not rest on mere conclusory allegations or denials in his pleadings.

Analysis

Age Discrimination Claim

Stevens claims that she was subjected to discrimination based upon her age.[41] To establish her *prima facie* case for age discrimination, the plaintiff must prove: (1) that she was discharged; (2) that she was qualified for her position; (3) that she was within the protected class; and (4) that she

---

[37] FN1. A "material" fact is one that might affect the outcome of the suit under the applicable substantive law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. In order for a dispute to be "genuine," the evidence before the Court must be such that a reasonable jury could return a verdict for the nonmoving party. *Id.*, see also, *Judwin Properties, Inc. v. United States Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir.1992); *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *Topalian v. Ehrman*, 954 F.2d 1125, 1131-32 (5th Cir.1992), cert. denied, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

[38] See *Celotex*, 477 U.S. at 328, 106 S.Ct. at 2555.

[39] Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

[40] *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 456-58, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

[41] Complaint ¶ 50.

was (a) replaced by someone outside the protected class, or (b) replaced by someone substantially younger, or otherwise discharged because of her age.[42] Bank One does not dispute that Stevens is over forty years of age and thus belongs to a protected class, or that Stevens was subject to an adverse employment action because she was offered a demotion in lieu of termination. Bank One argues, however, that Stevens cannot demonstrate that she was qualified for her position or that she was replaced by someone significantly younger.

In support of their argument, Bank One cites *McClaren v. Morrison Management Specialists, Inc.*[43] In *McClaren*, the Fifth Circuit found that since the plaintiff, McClaren, made signed representations to the Social Security Administration ("SSA") that he was totally unable to work, he was judicially estopped from showing that he was qualified for the position he was denied by the defendant. Therefore, the court held that the plaintiff could not make out a *prima facie* case of age discrimination. In this case, Stevens made a similar statement to the SSA in an attempt to receive disability benefits. Stevens filed for Social Security disability benefits shortly after she stopped working and she claimed to be totally and permanently disabled. Stevens claims that she has been unable to work in her previous position as a BCM, or any other position, since November 2002.

Based upon *McClaren*, because Stevens made these assertions to the SSA[44], she is judicially estopped from claiming that she is qualified for her position. There is also no genuine issue of

---

[42] *See Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 992 (5th Cir.1996); *Reeves v. Sanderson Plumbing,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

[43] 420 F.3d 457 (C.A.5 (Tex.), 2005).

[44] Stevens received long term disability through the Bank for a year. She filed for Social Security disability benefits shortly after she stopped working, in which she claimed to be totally and permanently disabled. Her claim through SSA was denied, but has been appealed. Stevens depo.Exh. 18.

9

material fact that Stevens was not replaced by someone significantly younger than she. Accordingly, she cannot make out a *prima facie* case of age discrimination. Because of this, the analysis need go no further and Bank One will prevail on summary judgment on the age discrimination claim.

Race discrimination

Likewise, to establish a *prima facie* case for race discrimination, Stevens must prove that she: is a member of a protected class; was qualified for her position; was subject to an adverse employment action; and was replaced by someone outside the protected class or, in the case of disparate treatment, show how others similarly situated were treated more favorably.[45] Relying upon *McClaren*, Stevens cannot show that she is qualified for her position. Nor is there any genuine issue of material fact that Stevens was replaced by someone outside the protected class.

Harassment

The court utilizes a five-factor test to determine if the plaintiff had established a viable cause of action in a harassment claim:

(1) The employee belongs to a protected group;

(2) The employee was subject to unwelcome harassment;

(3) The harassment was based on her status as a member of a protected group;

(4) The harassment complained of affected a "term, condition or privilege of employment," i.e., the sexual harassment must be sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment; and

---

[45] *Okoye v. University of Texas Houston Health Science Center*, 245 F.3d 507, 512-513 (5th Cir. 2001).

(5) Respondent superior, i.e., that the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[46]

In the case at bar, the record is devoid of any evidence of harassment. Stevens admitted in her deposition that she had never been subjected to any race-based comments. In an effort establish harassment based upon age, she points to the following remarks: "you mother your employees;" "we need someone more energetic;" "you may have been good in the earlier days before the bank changed, but the direction we're headed, I don't feel that you could keep up."[47] Bank One argues that these comments, allegedly made over the course of a year, do not indicate age-bias at all and, if they did indicate harassment, they were not sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment.

Bank One also submits that Stevens mistakes the Bank's efforts to help her perform her job as unlawful harassment. Whether an environment is objectively hostile or abusive is determined by considering the totality of the circumstances.[48] Although no single factor is required, courts look to the frequency and severity of the discriminatory conduct, whether it is physically threatening or humiliating as opposed to a mere offensive utterance, whether it unreasonably interferes with an employee's work performance, and whether the complained-of conduct undermines the plaintiff's workplace competence.[49] Stevens said that "Judy Weathers had made more than a normal amount

---

[46] *Jones v. Flagship International*, 793 F.2d 714, 719-720 (5th Cir.1986).

[47] Depo. of Stevens, Exh. 18.

[48] *Harris*, 510 U.S. at 23.

[49] *Hockman*, 407 F.3d at 325-26; *Equal Employment Opportunity Commission v. Nexion Health At Broadway, Inc.*, 2006 WL 2528432, *2 (C.A.5 (Tex. (C.A.5 (Tex.), 2006).

11

of calls to the banking center to see how things were going."[50] Stevens also claims that she was "[w]ritten up for employee complaints without previous knowledge or opportunity to discuss [the] validity of [the] complaint."[51] Bank One argues that the allegations in Stevens's complaint take issue with Bank One's management style, but the actions taken by Bank One did not constitute harassment.

There is no genuine issue of material fact that the instances that Stevens describes as harassment do not constitute harassment based on race or age. Moreover, even if these incidents did constitute unlawful harassment, Stevens did not follow the proper procedures to address any concern she may have had regarding the alleged harassment.

Stevens has not made a clear allegation, nor has she introduced evidence, that a supervisor engaged in the alleged acts of harassment. As such, Bank One can avoid liability for harassment by showing that: 1) the employer exercised reasonable care to prevent and to correct promptly any harassing behavior, and 2) that the harassed employee unreasonably failed to take advantage of any preventive opportunities provided by her employer.[52]

Bank One established a Non-Discrimination and Non-Harassment Policy, effective January 1, 1999. A formal system was established through which employees could report concerns associated with discrimination or harassment.[53] There is no genuine issue of material fact that

---

[50] *Id.*

[51] *Id.*

[52] See *Williams v. Administrative Review Board*, 376 F.3d 471 (5th Cir. 2004) (citing *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)).

[53] Depo. Stevens, Exhs. 15, 16.

12

Stevens did not utilize this system. She made no complaints of discrimination or harassment. Accordingly, summary judgment on Stevens's harassment claim will also be granted.

Lake Charles, Louisiana, this 21 day of September, 2006.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE